UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

M.M. Silta, Inc.,

      Plaintiff,

v.                                                                    MEMORANDUM OPINION
                                      AND ORDER

Cleveland-Cliffs, Inc., et al.,                                       Civil No. 06-3268
                                      Civil No. 06-3486

      Defendants,
and

Cliffs Erie, L.L.C.,

      Plaintiff,

v.

M.M. Silta, Inc.,

      Defendant.

_____

      Kyle E. Hart and Kristine Kroenke, Fabyanske, Westra, Hart and Thomson, P.A. for and on behalf of Plaintiff M.M. Silta, Inc.

      Robin C. Merritt, Hanft Fride, A Professional Association for and on behalf of Defendants.

_____

      This matter is before the Court upon Defendants' motions in limine.

1.      **Motion to exclude evidence regarding the negotiation, formation, terms, performance, termination or disputes surrounding Invoice/Sales Order 1374.**

Plaintiff M.M. Silta, Inc. ("Silta") is a small, family owned and operated salvage company located in the Upper Peninsula of Michigan.  Silta is owned and operated by Melvin Silta.   Defendants (collectively referred to as "Cliffs") are an international mining company and the largest producer of iron ore pellets in North America, as well as a major supplier of metallurgical coal to the global steelmaking industry.  In 2004, Cliffs was in the process of liquidating the former LTV taconite mine, mill and pellet plant in Hoyt Lakes, Minnesota.

One of the claims asserted in the Amended Complaint is breach of the Reclamation Services Agreement ("RSA") entered into between Silta and Cliffs in July 2004.  The RSA was preceded by an invoice or sales order referred to as "Invoice/Sales Order 1374."  Silta asserts that the idea of reclaiming, which consists of stockpiling, processing and selling iron ore pellets that had been deemed waste material, came from Silta and Jim Hoyt, an iron ore broker from Crown, Coke and Coal ("CCC").  CCC is a long time customer of Cliffs.

To pursue the reclaiming idea, Silta entered into an agreement with Cliffs, the terms of which were contained in Invoice/Sales Order 1374, by which Cliffs-Erie sold Silta one lot of reclaimed pellets for $3.00/net ton.  Silta alleges that pursuant to Invoice/Sales Order 1374, it sold $700,000 worth of pellets to CCC.

2

When Cliffs Erie's parent company, Cleveland-Cliffs, Inc., learned that Silta was selling pellets out of its mine to one of its customers, it is alleged that Cleveland-Cliffs demanded that the sales cease.  Subsequently, on July 28, 2004, Cliffs and Silta entered into the RSA which thereafter governed the sale of pellets to Silta.

Cliffs asserts that any evidence concerning Invoice/Sales Order 1374 is not relevant to Silta's claim that Cliffs breached the RSA, and that the probative value of such evidence may be unduly prejudicial or cause jury confusion.  The issue for the jury's determination is not whether Cliffs unfairly terminated Invoice/Sales Order 1374.  Rather, the issue is whether the RSA was breached.

Silta responds that the parties' work under Invoice/Sales Order 1374 is highly relevant to a multitude of issues in this case.  The bases for this claim are that under the RSA, Cliffs agreed to pay Silta $4,800,000 over time on a non-refundable basis as an advance against future sales of the pellets as specified amounts.  Thereafter, Silta reclaimed over 472,624 net tons of pellets out of the mine, and of this amount Cliffs sold 74,222.02 net tons of pellets.  Silta alleges that Cliffs paid the minimum amount required by the RSA, and then terminated said Agreement, claiming that the remaining pellets couldn't be sold.

3

Silta asserts that the history of sales under Invoice/Sales Order 1374 is relevant to show that there was a market for the pellets.  Silta further argues that such evidence is relevant to Cliffs' motive for not seeking to sell the reclaimed pellets under the RSA.  It is Silta's position that Cliffs was upset that Silta was selling pellets to one of its customers, and that as retribution, Cliffs failed to sell the pellets reclaimed by Silta under the RSA, while at the same time selling 20 million tons of its own pellets each year between 2004 and 2007.  Silta further asserts such evidence is relevant to explain Jim Hoyt's relationship with the project and the basis for his expert opinion.

Finally, Silta asserts that the evidence is relevant to the relationship between Cleveland-Cliffs, the parent company, over Cliffs Erie, and whether the corporate veil may be pierced.

"Exclusion under Fed.R.Evid. 403 is an extraordinary remedy and should be used sparingly."  Wescott v. Crinklaw, 68 F.3d 1073, 1077-1078 (8th Cir. 1995). The Court will deny the motion to exclude evidence concerning Invoice/Sales Order 1374.  Silta has demonstrated that this evidence is relevant to Silta's theory of the case.  Cliffs, on the other hand, has not demonstrated that the probative value of such evidence is substantially outweighed by the danger of undue

4

prejudice to warrant this extraordinary remedy.

2. **Motion to exclude any evidence regarding the negotiation, discussion, correspondence and ultimate settlement of issues involving CCC.**

Cliffs moves to exclude any evidence regarding its dispute and eventual settlement with CCC over the sale by Silta to CCC of reclaimed pellets. Cliffs argues this evidence is not relevant, and its probative value is likely outweighed by undue prejudice. Cliffs further argues that such evidence is inadmissible pursuant to Rule 408. This rule prohibits evidence of compromise or settlement "to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction."

Silta responds that the dispute between Cliffs and Jim Hoyt at CCC is highly relevant because it helps to explain Cliffs' motives in not selling any of the reclaimed pellets in 2005. Silta argues that it wasn't because the pellets couldn't be sold, it is because Cliffs wanted to sell pellets out of its other mines so they wouldn't have to share the profits with Silta, or pay CCC pursuant to a settlement agreement. Silta argues that the jury is entitled to hear that Cliffs created an incentive for itself not to sell pellets under the RSA.

5

Silta further argues that Rule 408 does not render this evidence inadmissible.  The Rule specifically provides that it doesn't require exclusion of evidence of compromise or settlement that is not offered for purposes prohibited thereunder.  Silta asserts that the evidence of the settlement agreement between Cliffs and CCC is not offered to prove liability, only to show that Cliffs negotiated an incentive for itself not to sell pellets pursuant to the RSA.

The Court will deny this motion as well.  Again, the evidence sought to be excluded by this motion appears to be relevant to Silta's theory of the case, and Cliffs has failed to show the probative value of this evidence is substantially outweighed by the danger of undue prejudice.  Cliffs has also failed to establish that the evidence is inadmissible pursuant to Fed. R. Evid. 408.  To the extent that Silta seeks to admit this evidence to show that Cliffs had a motive in not selling pellets pursuant to the RSA, not that Cliffs is somehow liable under the RSA based on the fact that it entered into a settlement with CCC, the evidence is admissible.

3.    **Motion to exclude any parol evidence relating to the RSA**

Cliffs assert that the RSA is a complete, unambiguous and integrated contract, therefore parol evidence should not be admitted to alter or explain,

contradict or modify its terms.

Silta responds that as Cliffs has not identified exactly what evidence is the subject of this motion, it is hampered in responding.  Notwithstanding, Silta asserts that it does not intend to offer parol evidence that, for example, Cliffs admitted during negotiations of the RSA that the RSA would create a partnership.  However, Silta does intend to offer evidence that, under the RSA, the parties made joint contributions of time, money and energy, shared profits and risk of losses.

Parol evidence is not admissible to vary, contradict or alter the written agreement.  Hruska v. Chandler Assoc., Inc., 372 N.W.2d 709, 713 (Minn. 1985). There are two exceptions to this rule - one is where the contract is ambiguous and the other is where the written agreement was drafted to deceive a third party.  Id.

At this time, particular evidence has not been identified as being offered as parol evidence, and Silta has taken the position that it does not intend to offer parol evidence.  Accordingly, the Court will dismiss the motion as moot.  If, during trial, Cliffs is of the opinion that Silta is attempting to offer parol evidence that will vary the terms of the contracts at issue, Cliffs may renew its motion at that time.

4.    **Motion to exclude any evidence of or relating to the value of the asbestos-containing breakers to PolyMet, including the cost to replace.**

In its Amended Complaint, Silta asserts that in June 2004, it entered into an agreement ("Breaker Sale Agreement") by which Silta purchased 248 MS13 breakers from Cliffs, located inside the mine, for $2,480.00.  The Breaker Sale Agreement required Silta to timely remove the breakers from the mine site.  Ex. F to Cliffs Amended Answer.  Silta did not immediately remove the breakers, and eventually, Cliffs sold the breakers to PolyMet when PolyMet bought the mine in November 2005.  Silta learned of this sale when it attempted to remove the breakers in January 2006.  At that time, Cliffs allegedly told Silta that it believed Silta had abandoned the breakers because Silta had not sought to remove the breakers for over a year after purchasing them.

The proper measure of damages for Silta's breach of contract claim is the difference between the market price at the time when Silta learned of the breach and the contract price, together with any incidental and consequential damages, less the expense saved in consequence of the Cliff's breach.  Minn. Stat. § 336.2-

713(1).[1]

Cliffs argues that the value of the breakers to PolyMet is not the proper measure of damages under any theory of recovery asserted by Silta.  Cliffs asserts that fair market value is that which a willing, but not compelled, buyer would pay.  See In re estate of Muehring, 1992 WL 189340, * 3 (Minn. Ct. App. Aug. 11, 1992)(citing Black's Law Dictionary 537 (5th ed. 1979)) (The amount at which property would change hands between a willing buyer and a willing seller * * * if then offered for sale in the open market.)  Cliffs argues that the value of the breakers to PolyMet, which is currently operating the former LTV mine site and using the breakers, is the antithesis of fair market value, as the sale of the breakers was not one on the open market.

Silta disputes this contention, arguing that fact questions exist as to whether PolyMet was compelled to buy the breakers from Cliffs when it purchased the LTV mine.  Silta asserts that PolyMet could have purchased different breakers on the open market, or could have rewired its operations to

---

[1]In response to this motion, Silta argued that it had asserted a conversion claim with respect to the breakers, therefore the measure of damages for conversion controls.  Silta did not assert a claim for conversion with respect to the breakers in its Amended Complaint, however. Count VII of the Amended Complaint, titled Conversion/Minn. Stat. § 548.05, discusses the alleged conversion of pellets, not breakers.  See Amended Complaint, ¶ 47.

utilize a different type of breaker.

Cliffs further argues that the value of the breakers, in place and in use, does not reflect the value of the breakers which would have existed if Silta had removed them as required by the Sales Order.  Cliffs asserts that by not removing the breakers for over 18 months, Silta is trying to reap a windfall created by its own breach of contract.  It was only after PolyMet purchased the LTV mine did Silta come forward and assert rights to the breakers.  But if Silta had removed the breakers as was required by the applicable sales order, the value of the breakers, on site, could not be claimed.

Silta disputes this contention as well, arguing that it did not abandon the breakers and thus did not breach the Breaker Sale Order.

The Court finds that at this time, the evidence as to the price paid by PolyMet for the breakers should not be excluded, as it may be relevant to the fair market value of said breakers.

5. **Motion to exclude any evidence of or relating to the value of the asbestos-containing breakers, other than that based on salvage.**

Cliffs argues that evidence as to damages must be limited to only those damages that were foreseeable at the time the contract was entered into. In this

case, when the parties entered into the Breaker Sale Agreement, said Agreement was premised on the salvage value of the breakers after the asbestos had been abated.  Cliffs will present evidence that the intent of the parties was clear that Silta would abate the asbestos, in exchange for which Silta would gain the salvage rights to any valuable metals contained in the breakers.  Cliffs asserts that the parties did not contemplate that PolyMet would acquire and use the breakers.

Silta responds that questions as to the foreseeability of the damages is a fact question for the jury to decide.  <u>Simeone v. First Nat'l Bank Assoc.</u>, 73 F.3d 184, 188 (th Cir. 1996).  In addition, foreseeability may limit consequential damages, but not the market value.  <u>Simeone</u>, 73 F.3d at 188.

At this time, the Court finds that Silta has demonstrated that there is no basis to exclude evidence as to the value of the breakers, other than their salvage value.

IT IS HEREBY ORDERED that:

1.  Motion to exclude evidence regarding the negotiation, formation, terms, performance, termination or disputes surrounding Invoice/Sales Order 1374 is DENIED.

2.  Motion to exclude any evidence regarding the negotiation, discussion,

correspondence and ultimate settlement of issues involving CCC is DENIED.

3.  Motion to exclude any parol evidence relating to the RSA is DISMISSED

AS MOOT.

4.  Motion to exclude any evidence of or relating to the value of the

asbestos-containing breakers to PolyMet, including the cost to replace is

DENIED.

5.  Motion to exclude any evidence of or relating to the value of the

asbestos-containing breakers, other than that based on salvage is DENIED.

Date: February 28, 2008

s / Michael J. Davis
Michael J. Davis
United States District Court