UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

M.M. Silta, Inc.,

       Plaintiff,

v.

                                 MEMORANDUM OPINION
                                     AND ORDER
                                  Civil No. 06-3268

Cleveland-Cliffs, Inc., et al.,

       Defendants.

_____

       Kyle E. Hart and Kristine Kroenke, Fabyanske, Westra, Hart and Thomson, P.A. for and on behalf of Plaintiff M.M. Silta, Inc.

       Robin C. Merritt, Hanft Fride, A Professional Association for and on behalf of Defendants.

_____

       This matter is before the Court upon Plaintiff M.M. Silta, Inc.'s ("Silta")

motion to amend the judgment and Defendants Cleveland-Cliffs, Inc., Cliffs

Mining Company, Cliffs Erie, L.L.C. and John Does 1 through 5's ("Cliffs")

motion for judgment as a matter of law, a new trial or remittitur.

**"One Man's Trash is Another Man's Treasure"**

       Silta is in the salvage and resale business.  Silta brought this suit against

Cliffs, alleging Cliffs breached two contracts involving the reclamation of pellets

and electrical breakers located at the LTV taconite mine in Hoyt Lakes,

Minnesota.

The jury found in Silta's favor as to its claim that Cliffs breached the

Breaker Sales Agreement and awarded Silta $6,820,000 in damages - $27,500 per

breaker.  At trial, Silta had presented evidence as to the fair market resale value

of the breakers, and the jury presumably accepted Silta's valuation.  Cliffs moves

for judgment as a matter of law or in the alternative for a new trial on the basis

that the value of the breakers had to be based on their salvage value, not their

resale value.  For the reasons that follow, Cliffs motion will be denied.

I.      Cliff's Motion for Judgment as a Matter of Law or in the Alternative a New
        Trial or Remittitur.

        **A.      Judgment as a Matter of Law**

        **1. Standard - JMOL**

The moving party bears a heavy burden on its motion for judgment as a

matter of law. Haynes v. Bee-Line Trucking Co., 80 F.3d 1235, 1238 (8th Cir.

1996)(citation omitted).  In considering the motion, the Court must (1) view the

evidence in the light most favorable to the prevailing party; (2) assume that all

conflicts in the evidence were resolved in favor of the prevailing party; (3)

2

assume as proved all facts that the prevailing party's evidence tended to prove; and (4) give the prevailing party the benefit of all favorable inferences that may reasonably be drawn from the facts proved.  Id.  After such consideration, the court must deny the motion if reasonable people could differ as to the conclusions to be drawn from the evidence.  Id.

### 2.  Waiver

Silta argues that Cliffs waived its right to move for judgment as a matter of law by failing to move for a directed verdict at trial with regard to evidence concerning the fair market value of the breakers.  Fed. R. Civ. P. 50(a)(2) provides that a motion for judgment as a matter of law may be filed at any time before the case goes to the jury, and must specify the judgment sought and the law and facts that entitle the movant to judgment.  Rule 50(b) provides that a party may renew a motion for judgment as a matter of law if such motion is filed within ten days after the entry of judgment.

After Silta had rested, Cliffs did move for a directed verdict on two issues: that no partnership existed between the parties and that Cliffs did not owe fiduciary duties to Silta.  A motion for a directed verdict was not made on the basis asserted in the present motion - that the damages award is based on

speculative evidence.

Cliffs responds that it did move to limit damages prior to trial, and took the position at trial that if the jury found that Cliffs breached the Breaker Sales Agreement, Silta would have been damaged only to the extent of the lost opportunity to scrap the breakers.  Cliffs therefore argues it did not waive the right to move for a directed verdict on the issue of damages, where it is again arguing that damages could not exceed the scrap value based on the evidence presented.

In reviewing the record, the Court finds that Cliffs has not waived its right to move for JMOL on the basis that the damages award is based on speculative evidence.   Prior to trial, Cliffs did move to limit the evidence as to damages arising from the Breaker Sales Agreement to evidence as to the scrap value of the breakers.  The motion was based, in part, on the argument that the fair market value of the breakers is determined by evidence as to sales in the market place. In the current motion, Cliffs is again arguing that the fair market value is determined by evidence of sales in the marketplace, and that Silta provided no such evidence.

The purpose of a Rule 50 motion is "to apprise the district court of the

alleged insufficiency of the plaintiff's suit before the case is submitted to the jury." Browning v. President Riverboat Casino-Missouri, Inc., 139 F.3d 631, 636 (8th Cir. 1998). As Cliffs did raise its arguments as to the type of evidence needed to support the damages that could arise from a breach of the Breaker Sales Agreement, the Court finds that Cliffs did not waive its right to move for JMOL.

### 3. Whether Damages Award was based on Speculative Evidence

Cliffs argues it is entitled to judgment as a matter of law because no evidence was presented to the jury to support a fair market valuation of $27,500 per breaker, and that an award based on speculative evidence is not recoverable. See Hornblower & Weeks-Hemphill Noyes v. Lazere, 301 Minn. 462, 467, 222 N.W.2d 799, 803 (1974). Cliffs argues that fair market value must be determined by evidence of a completed sale of a comparable breaker, or evidence of an accepted or unaccepted offer to buy the breakers or comparable breakers. Cliffs further argues that while lost profits may be recoverable, they must be proven with sufficient certainty, such as with evidence of past performance, expert testimony, economic and financial data, market surveys, business records etc. See Restatement (Second) of Contracts, § 352. See also, Cardinal Consulting co. v. Circo Resorts, Inc., 297 N.W.2d 260 (Minn. 1980)(recovery for lost profits

available for new business ventures, if evidence of damages is established to a reasonable degree of certainty).

Cliffs asserts that <u>Davis v. Forest Lake, Inc.</u>, No. C5-01-1398, 2002 WL 764262 (Minn. Ct. App. April 30, 2002) provides analogous facts and supports its motion for JMOL. In <u>Davis</u>, the plaintiff began a new business as a retailer for pontoons. After two months, however, the boat manufacturer cancelled its agreement with the plaintiff. At trial, the plaintiff had testified that he suffered reliance damages - those costs expended to set up the business and lost profits. To support the claim for lost profits, the plaintiff testified that he would have sold 25 pontoons over the summer. The jury found in favor of the plaintiff, and awarded damages in an amount that covered, at least in part, the claim for lost profits. <u>Id.</u> at *3.

On appeal, the Minnesota Court of Appeals reversed the damages award, finding that the evidence did not support the plaintiff's testimony that he could have sold 25 pontoons in a one-year period. The court found that no evidence of comparable sales supported such testimony, and the fact that the plaintiff had no experience selling pontoons, weighed against the damages award.

Cliffs argues that Silta similarly failed to prove, to a reasonable degree of

certainty, its claim for lost profits as the evidence presented by Silta proved, at most, that electrical breakers can be used in various industrial settings, not that there was a market for such breakers.  Cliffs also argues that the lack of economic forecasts, expense data, market surveys or sale comparisons reveals the speculative nature of Silta's claims.

Silta argues that damages in this case are recoverable pursuant to Minn. Stat. § 336.2-317(1), which provides that the buyer is entitled to recover the direct market value without regard to foreseeability and without having to prove lost profits.  Only when the buyer opts to recover indirect or consequential damages does foreseeability come into play.  Simeone v. First Bank Nat'l Assoc., 73 F.3d 184, 188 (8th Cir. 1996).  The Court notes, however, that Jury Instruction No. 21 instructed the jury that losses are recoverable if they were foreseeable by the parties at the time the contract was entered into.  Thus, foreseeability was and is an issue with regard to the amount of damages.

Having presided at trial, the Court finds that sufficient evidence was presented to support the damages award.  Such evidence was introduced through two witnesses, Melvin Silta and Bernard Michals.  Mr. Silta testified that in his opinion, the breakers were worth between $23,000 and $30,000 each as of

the date that Cliffs breached the agreement.  Doc. No. 102; Silta Trial Testimony

p. 103. Mr. Silta's valuation also took into consideration the costs of removal,

asbestos abatement and storage.  Id. p. 104.  Mr. Silta's opinion testimony was

supported by his years of experience in the salvage/resale market, trade

magazines that act as the "bible" for the resale market industry, conversations

with industry representatives, and trade publications and quotes for similar

breakers.  Id. p. 94-103; Plaintiffs' Trial Ex. Nos. 46, 47 and 48.  Mr. Silta further

testified that, in formulating his opinion, he factored in the amount Rich

Gresham had sold the breakers for, as well as the fact that Mike Rushford had

sold similar breakers for $25,000.  Id., p. 100-103.  Mr. Silta also testified as to the

market for the breakers, the condition of the breakers, and the uses for such

breakers.  Id., p. 96-97.  Silta further notes that Cliffs' materials manager, Steve

DeVaney, testified that he considered Mr. Silta an expert in valuing salvaged

items for resale.  Doc. No. 113; Devaney Trial Testimony p. 7.

Bernard Michals is an electrician who maintained and repaired the

breakers at issue for the past 35 years.  Doc. No. 113, Michals Trial Testimony, p.

6-7.  Mr. Michals testified that he was very familiar with the breakers, that they

were one of the best breakers in the world, in excellent shape and worth

8

approximately $24,000 apiece.  Id., p. 16-17 (valuing the cabinet, metering and switchgear each at $8,000).  Mr. Michals also testified as to the market for the breakers.  He testified that they could be used in any commercial plant, power plant, coal plant or mills and that the market was worldwide.  Id. p. 19-21. The Court further notes that Cliffs did not offer competing expert opinions as to the fair market resale value of the breakers.  Thus, the only evidence presented to the jury as to fair market resale value of the breakers supported Silta's position.

Cliffs also asserts that Silta only offered evidence as to the possible breaker resale value.  No evidence was presented as to the cost of uninstalling, inspecting, and transporting the 2,000 pound breakers for storage.  There would also be a "holding period" - a period of time during which the prospective sales would likely have occurred.  Such holding period would have defined and identified an estimated future stream of income, which would have to be reduced to present value.  Cliffs argues that such expenses must be deducted from the fair market resale value to reach a proper measure of damages.

Mr. Silta testified that his opinion as to the value of the breakers was "net" of the costs of removing and storing the breakers.  Doc. No. 102, Silta T. p. 104. That Mr. Silta did not itemize such costs does not make his testimony

speculative.  See Fudally v. Ching Johnson Bldgs, Inc., 360 N.W.2d 436 (Minn. Ct.

App. 1985) (citing Carroll v. Pratt, 247 Minn. 198, 202, 76 N.W.2d 693, 697 (Minn.

1956)).

In light of the standard to be applied to motions for judgment as a matter

of law, and the fact that evidence was introduced which supports the verdict

amount, Cliffs' motion for JMOL on the basis that the verdict is based on

speculative evidence will be denied.

**4.     Verdict is 2,750 Times the Purchase Price/Not Reasonably
         Foreseeable and Disproportionate as a Matter of Law.**

Cliffs also argues it is entitled to JMOL because the verdict is 2,750 times

the purchase price, unforeseeable and disproportionate as a matter of law.  Cliffs

argues that under Minnesota law, a plaintiff's recovery under breach of contract

is limited to the recovery of reasonably foreseeable damages or those within the

contemplation of the parties at the time the contract was entered into.  Lassen v.

First Bank Eden Prairie, 514 N.W.2d 831, 838 (Minn. Ct. App. 1994) (damages

recoverable in contract action are those arising naturally from breach or those

which can be reasonably supposed to have been contemplated by parties.)  Cliffs

argues that disproportionate damages are disallowed under both the UCC and

the Restatement (Second) of Contracts, § 351(3).

As noted previously, Jury Instruction No. 21 instructed the jury that "[d]amages may be awarded for losses that the parties, when they entered the contract, could foresee would probably result if the contract was breached." The Court thus presumes that the jury found that Silta's damages were foreseeable at the time the contract was entered into.

With respect to Cliffs' argument that the Breaker Sales Agreement was unconscionable, the issue is governed by Minn. Stat. § 336.2-302(1), which provides:

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

Unconscionability of a contract clause is to be determined at the time of the contract was entered into. Minn. Stat. § 336.2-302 & cmt. 1 ("The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of

the contract.")  "To establish unconscionability, a party must demonstrate that it had no meaningful choice but to deal with the other party and to 'accept the contract as offered.'"  <u>Sports and Travel Marketing, Inc. v. Chicago Cutlery Co.</u>, 811 F. Supp. 1372, 1380 (D. Minn. 1993) (citing <u>RJM Sales & Mktg</u>., 546 F. Supp. 1368, 1374-75 (D. Minn. 1982)).

Cliffs has presented no evidence that it was forced to enter into the Breaker Sales Agreement.  Rather, at the time this contract was entered into, the evidence indicates that the contract was not an unusual one given the fact that Cliffs was liquidating the mine, and was concerned about asbestos abatement. Doc. No. 113, Steve DeVaney T. p. 47.  No testimony was submitted to suggest that Cliffs felt it had no choice but to enter into the contract with Silta, or to accept the contract as offered.  Furthermore, DeVaney testified that he was very familiar with Silta, and considered him an expert in the salvage business, and that nothing in the Breaker Sales Agreement prevented him from reselling the breakers rather than scrapping them.  <u>Id.</u> p. 7, 54.  Finally, DeVaney admitted that he didn't know what the breakers were worth, nor did he try to find out the value of the breakers before selling them to Silta.  <u>Id.</u>  11.  Based on this evidence, and construing that evidence in Silta's favor, the Court finds that the Breaker Sales Contract was not

12

unconscionable.

Finally, Restatement (Second) of Contracts § 351 (3) provides that "[a] court may limit damages for foreseeable loss by excluding recovery for loss of profits, by allowing recovery only for loss incurred in reliance or other if it concludes that in the circumstances justice so requires in order to avoid disproportionate compensation."  Cliffs argues that comment f to § 351 addresses circumstances similar to this case - where the purchase price is relatively small, and the contract formation demonstrates an informality of dealing, indicating no careful attempt to allocate all of the risks.

> There are unusual instances in which it appears from the circumstances either that the parties assumed that one of them would not bear the risk of a particular loss or that, although there was no such assumption, it would be unjust to put the risk on that party.  One such circumstance is an extreme disproportion between the loss and the price charged by the party whose liability for that loss is in question.  The fact that the price is relatively small suggests that it was not intended to cover the risk of such liability.  Another such circumstance is an informality of dealing, including the absence of a detailed written contract, which indicates that there was no careful attempt to allocate all of the risks.  The fact that the parties did not attempt to delineate with precision all of the risks justifies a court in attempting to allocate them fairly. . . the rule stated in this Section recognizes that what is done in such cases is the imposition of a limitation in the interests of justice.

Cliffs asserts that the verdict in this case is excessive given the fact that the

verdict is 2,750 times the $2,480 contract price, and the evidence demonstrates

that the parties entered into the Breaker Sales Agreement quickly and informally.

Silta responds that the § 351 of the Restatement (Second) of Contracts has

not been adopted in any Minnesota state or federal case.  Further, the UCC

provides the proper measure of damages, not the Restatement.  Also, Cliffs did

not introduce any evidence concerning what the breakers were worth to Cliffs.

Without such evidence, Cliffs has no basis to argue the that the damages are

disproportionate.  In this regard, Silta asks that the Court take judicial notice of

the many asbestos judgments throughout the country.  Based on asbestos

litigation, it would not be unreasonable to assume that the value of asbestos

abatement to Cliffs was high.  Given the circumstances under which Silta

purchased the breakers -at liquidation prices- Silta argues the traditional

disproportionate standards have no applicability here.

The Court is hesitant to adopt § 351 with respect to this case as the contract

at issue was entered into between two experienced commercial entities.  First, as

noted by Silta, no reported Minnesota state or federal decision has adopted or

applied this section of the Restatement.  Second, the evidence presented at trial

demonstrated that the $10 purchase price was not necessarily unusual as Cliffs

was in the process of liquidating the mine, and that having another party deal

with asbestos abatement was of value to Cliffs.   Mr. Michals testified that while

Cliffs was liquidating the mine, DeVaney sold five drill sub units worth

approximately $450,000 for $1,200.  Doc. No. 103, Michals T. p. 15.   Under these

circumstances, the Court does not believe that justice requires a finding that the

verdict is disproportionate.

**B.     New Trial**

**1.      Verdict Against the Great Weight of the Evidence**

Cliffs also moves for a new trial arguing that the verdict is against the great

weight of the evidence.  Cliffs asserts that the great weight of the evidence

established that Silta intended to scrap the breakers at the time he purchased

them.  Cliffs asserts that viewing the evidence as a whole, including Silta's course

of dealing and his conduct after the issuance of the invoice, together with

DeVaney's testimony, a new trial is warranted.

To be entitled to a new trial on the basis that the verdict is against the

weight of the evidence, the Court may "weigh the evidence, disbelieve witnesses,

and grant a new trial even where there is substantial evidence to sustain the

verdict." White v. Pence, 961 F.2d 776, 780 (8th Cir. 1992).  "[T]he true standard

for granting a new trial on the basis of the weight of the evidence is simply one

which measures the result in terms of whether a miscarriage of justice has

occurred.  When through judicial balancing the trial court determines that the

first trial has resulted in a miscarriage of justice, the court may order a new trial,

otherwise not."  Id. (citation omitted).

DeVaney testified that Silta told him he would be salvaging the breakers

after he purchased them.  Doc. No. 113, DeVaney T. p. 19.  Silta testified, on the

other hand, that at the time he purchased the breakers, resale was one of the

options that he was considering, because "anything I buy is for resale." Doc. No.

102, Silta T. p. 136.  At trial, DeVaney conceded that the Breaker Sales Agreement

did not require Silta to salvage the breakers, but that the Agreement clearly

contemplated that Silta would abate the asbestos, and that without the asbestos,

the breakers would have been non-functional.  Doc. No. 113, DeVaney T. p. 46-47.

Cliffs argues that abating the asbestos is tantamount to reducing the breakers to

scrap.  However, both Mr. Silta and Mr. Michals testified that the asbestos was

not friable, and that the breakers could be moved without first abating the

asbestos.  Doc. No. 102, Silta T. P. 139; Doc. No. 103, Michals T. p. 12-13.  Based

on the contradictory evidence presented at trial, together with the fact that the

jury was free to find certain witnesses more credible than others, the Court

cannot find that the trial resulted in a miscarriage of justice warranting a new

trial.

### 2.      New Trial on the Issue of Damages

Cliffs further argues that a new trial may be granted on the grounds that

the jury's verdict is excessive if the court finds the verdict is a "plain injustice",

"monstrous" or "shocking."  See School Dist. No. 11 v. Sverdrup & Parcel &

Assoc., Inc., 797 F.2d 651, 654 (8th Cir. 1986); DeFranco v. Valley Forge Ins. Co.,

754 F.2d 293, 296 (8th Cir. 1985).  Minnesota law mirrors the federal standard.

Sandt v. Hylen, 301 Minn. 475, 476-77, 224 N.W.2d 342, 343 (1974).

In the alternative, Cliffs asks the Court to order remittitur.  Remittitur is

appropriate where the "verdict is so unreasonably high as to result in a

miscarriage of justice" or the verdict is "so inordinately large as obviously to

exceed the maximum limit of a reasonable range within which the jury may

properly operate."  Slatton v. Martin K. Eby Construction Co., 506 F.2d 505, 508

(8th Cir. 1974).  In arguing that remittitur is appropriate, Cliffs again argues that

the evidence and the law do not support the verdict.  Cliffs requests the Court

order conditional remittitur in the amount of $124,000.  Such amount is

supported by the testimony of Mark Sutich, that the reasonable salvage value of the breakers was a maximum of $500 each.

In determining whether or not a verdict is excessive, the Court must "consider all the evidence, the demeanor of the parties, and the circumstances of the trial." Johnson v. Washington Cty, 518 N.W.2d 594, 602 (Minn. 1994). Under Minnesota law, a damages award is excessive if it exceeds the range of damages submitted in evidence. Sandt, 301 Minn. 475, 476-77, 224 N.W.2d 342, 343. In this case, evidence was presented supporting the amount of damages awarded - through the testimony of both Mr. Silta and Mr. Michals. Taking into account all of the evidence, the demeanor of the witnesses and the circumstances of the trial, the Court finds that the verdict is not excessive.

**3.    New Trial is Warranted for Other Errors that Occurred During Trial.**

Cliffs argues that the jury instructions on damages did not fairly and accurately describe the measure of damages, because they did not properly instruct the jury that a party cannot be better off because of the breach than he would have been had there been no breach, and that the jury must deduct expenses saved as a consequence of the breach from any damages amount. The

error was compounded, argues Cliffs, by the Court's instruction defining market value.

In Jury Instruction No. 21, the Court instructed the jury as to damages pursuant to Minnesota's Model Jury Instruction 20.60.  In addition, Instructions No. 21 and 22 both instructed the jury that the damages awarded to Silta, if any, should put Silta in the position it would have been in if the contract had not been breached by Cliffs.  Both instructions address Cliffs' concern that the jury be instructed that Silta should not be better off as a result of Cliffs' breach.  This necessarily encompasses Cliffs' argument that expenses saved would have to be deducted from a damages award.[1]  Nor did the Court err by including an instruction on fair market value. Taken as a whole, the instructions properly advised the jury as to the measure of damages.

Cliffs also argues that the Court's instruction regarding Silta's breach misstated the law.  In Jury Instruction No. 20, the jury was instructed as to when a material breach of contract excuses performance by the other party, and further instructed that "termination of a contract usually requires that reasonable

---

[1]The Court further notes that Cliffs did not request the Court to give an instruction regarding the deduction of expenses saved based on Minn. Stat. § 336.2-713, therefore Cliffs has waived its right to such an instruction.  Fed. R. Civ. P. 51 (c)(1).

notification be received by the other party."  Cliffs asserts it did not claim that the

Breaker Sales Agreement had been terminated.  Rather, it claimed that Silta's

prior breach excused Cliffs' performance.  By instructing the jury as to notice for

termination, Cliffs could not establish its defense.  See Zobel & Dahl Constr. v.

Crotty, 356 N.W.2d 42 (Minn. 1984) (Minnesota law does not require a party to a

contract to give notice and the opportunity to cure.)

The notice instruction is consistent with Minn. Stat. § 336.2-309(3)[2] and Silta

argues the instruction was proper as the evidence shows that Cliffs terminated

the Breaker Sales Agreement, rather than affirming it and suing Silta for damages

based on Silta's alleged breach.  Even if Cliffs' theory of the case was that it did

not terminate the agreement, the instruction was harmless.  The special verdict

asked whether Silta materially breached the Breaker Sales Agreement by failing

to remove the breakers within a reasonable time.  The question did not inquire

into notice or opportunity to cure.  Accordingly, instructing the jury as to notice

of termination of a contract did not prejudice Cliffs.

---

[2]Minn. Stat. § 336.2-309(3) provides: "Termination of a contract by one party except on the happening of an agreed event requires that reasonable notification be received by the other party and an agreement dispensing with notification is invalid if its operation would be unconscionable."

### C. Judgment Should be Against Cliffs Erie, LLC Only.

At this time, Silta agrees that judgment should be against Cliffs Erie, LLC - reserving their right to pierce the corporate veil at a later time if necessary. The judgment will be amended accordingly.

II.    Silta's Motion to Amend the Judgment

Plaintiff moves to amend the judgment to add prejudgment interest in the total amount of $509,166.25. In response, Cliffs only argues that pre-judgment interest in this case amounts to over 200 times the actual damages sustained by Silta, which underscores the need for a new trial. As Cliffs did not challenge the entitlement to prejudgment interest, or Silta's calculation of such interest, Silta's motion for prejudgment interest will be granted.

IT IS HEREBY ORDERED that:

1.    Silta's Motion to Amend the Judgment [Doc. No. 107] is GRANTED.

The judgment in this action is amended to include $509,166.25 in

prejudgment interest.

2.      Cliffs' Motion for Judgment as a Matter of Law, or in the Alternative

a New Trial or Remittitur [Doc. No. 114] is GRANTED to the extent

that the judgment be entered against Cliffs Erie, LLC only, and

DENIED in all other respects.

Date: June 21, 2008

s / Michael J. Davis
Michael J. Davis
United States District Court

Civil No. 06-3268